**Enoch CREEK, Jr., Appellant,**

**v.**

**William J. STONE, Appellee.**

**No. 20563.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 16, 1967.

Order Filed Feb. 23, 1967.

Opinion Filed May 1, 1967.

Mr. Brian Michael Olmstead, Washington, D. C., for appellant.

Mr. Richard W. Barton, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Charles T. Duncan, Corp. Counsel Milton D. Korman, Principal Asst. Corp. Counsel at the time of argument, and Hubert B. Pair, Asst. Corp. Counsel, were on the pleadings, for appellee.

Before BAZELON, Chief Judge, McGOWAN and LEVENTHAL, Circuit Judges.

PER CURIAM:

The District Court denied habeas corpus relief to appellant, a seventeen year old juvenile, on his allegation that he was unlawfully confined in the District of Columbia Receiving Home for Children. He was permitted to appeal in forma pauperis and the record was docketed in this court on November 10, 1966. But when appellant's attorney took no further action to prosecute the appeal, even after this default was called to his attention by our Clerk, we entered an order to show cause why the appeal should not be dismissed. Counsel responded with a lengthy memorandum, in lieu of a brief for appellant, which caused us to require full argument on the issues revealed therein and to order, sua sponte, that appellant's social file in the Juvenile Court be transmitted to this court for an *in camera* inspection.[1]

Appellant was arrested on May 31, 1966, on a charge of robbery and detained at the Receiving Home by the Juvenile Bureau of the Police Department. A week later the Juvenile Court ordered that confinement be continued and, in due course, a petition charging twelve law violations was filed in the Juvenile Court. 11 D.C.Code § 1551(a) (1) (A) (Supp. V, 1966). Subsequently, the Juvenile Court scheduled the matter for trial "subject to call of clerk's office."[2]

Before trial in the Juvenile Court appellant filed this petition for writ of habeas corpus in the District Court asserting that his detention in the Receiving Home was unlawful, and alleging, *inter alia*, that the Receiving Home has no facilities to provide psychiatric assistance which he needs,[3] and that the Juvenile Court refused to hold a hearing on the suitability of the Receiving Home as a place of detention for appellant despite appellant's repeated requests. The District Court declined to hear evidence, stating:

A determination of whether the District of Columbia Receiving Home for Children is a suitable place for [appellant's] detention without providing psychiatric assistance which the [appellant] alleges he needs is not germane to the issue of the lawfulness of the [appellant's] present detention, pending trial.

---

1. Our authority to inspect these records is found in 11 D.C.Code § 1586(b) (Supp. V, 1966) and the Juvenile Court's implementing Rule 4(C) (2) (b), 93 Wash. L.Rep. 201 (1965).

2. There was a lapse of three months between the time appellant was arrested and the time the petition was filed in Juvenile Court. This period was occasioned by the Juvenile Court's consideration of whether to waive its jurisdiction over appellant. On July 12, 1966, formal waiver proceedings were initiated by order of the Juvenile Court. On July 26, 1966, counsel for appellant examined the Juvenile Court legal and social records regarding appellant. On August 19, 1966, a waiver hearing was held, and on September 1, 1966, the Juvenile Court entered an order declining to waive jurisdiction. See Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

3. Our disposition in this case does not require consideration of other questions raised by appellant's habeas corpus petition, namely, (1) the validity of the statute permitting detention for five working days without a judicial order; (2) the validity of continuing confinement without consideration in a hearing of some alternative solution such as pretrial release to parental custody; and (3) appellant's right to bail.

These remarks, though not entirely clear, apparently reflected a ruling refusing to afford any consideration on the merits, in the view (urged by appellee's counsel to us) that there are no instances in which a court has the power to hold interim custody in the Receiving Home to be invalid. Since we do not accept the latter position, at least as presented by counsel, we believe some discussion is appropriate, even though as will appear we have already taken the specific action requested by appellee of authorizing appellant's transfer elsewhere.

We begin by noting that in general habeas corpus is available not only to an applicant who claims he is entitled to be freed of all restraints, but also to an applicant who protests his confinement in a certain place, or under certain conditions, that he claims vitiate the justification for confinement.[4]

Turning to the considerations that apply with respect to juveniles in custody under the Juvenile Court Act, we begin by emphasizing that the Juvenile Court legislation rests, in various aspects, on the premise that the state is acting as parens patriae, that it is undertaking in effect to provide for the child the kind of environment he should have been receiving at home, and that it is because of this that the appropriate officials, while subject of course to the requirement that juvenile proceedings must not be arbitrary or unfair, are permitted to take and retain custody of the child without affording him all the various procedural rights available to adults suspected of crime.[5]

In the "Construction and purpose" section of the Juvenile Court Act, Congress has provided that its provisions

shall be liberally construed so that, with respect to each child coming under the court's jurisdiction:

\* \* \* \* \* \*

(3) when the child is removed from his own family, the court shall secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given him by his parents. 16 D.C.Code § 2316(3) (Supp. V, 1966).

The Congressional objective comprehends psychiatric care in appropriate cases. *See* 11 D.C.Code §§ 1551(a) (1) (F) and (G) (Supp. V, 1966), which provides that the Juvenile Court may remove a child from his family if the parent neglects to "provide support and care necessary for his health or welfare" or "neglects or refuses to provide or avail himself of the special care made necessary by his mental condition." [6]

The interrelated provisions of the Act, which must be read together, include the command of Congress specifying: "Every officer and department of the District of Columbia is required to render all assistance and co-operation within his or its jurisdictional power which may further the objects of this chapter and subchapter I of chapter 23 of Title 16." 11 D.C.Code § 1584 (Supp. V, 1966). Congress empowered the Juvenile Court to "cause a child coming under its jurisdiction to be examined by a physician, psychiatrist or psychologist appointed by it." 16 D.C.Code § 2312 (Supp. V, 1966). It also required the Commissioners to appoint qualified experts whose services are available to the Juvenile Court. 24 D.C.Code § 106 (1961).

4. *E. g.*, Lake v. Cameron, 124 U.S.App. D.C. 264, 364 F.2d 657 (1966) (en banc); Benton v. Reid, 98 U.S.App.D.C. 27, 231 F.2d 780 (1956); Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415 (1953); Kautter v. Reid, 183 F.Supp. 352 (D.D.C. 1960) (Youngdahl, J.).

5. *See* Kent v. United States, 383 U.S. 541, 554–556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); Pee v. United States, 107 U.S.

App.D.C. 47, 274 F.2d 556 (1959); Harling v. United States, 111 U.S.App. D.C. 174, 295 F.2d 161 (1961); Harrison v. United States, 123 U.S.App.D.C. 230, 359 F.2d 214 (1965) (en banc).

6. Given the rehabilitative and therapeutic purpose of the Juvenile Court, the child need not suffer from a "mental disease or defect" sufficient to exculpate an adult from criminal responsibility.

 The purpose set forth in 16 D.C.Code § 2316(3), while primarily relating to the Juvenile Court's exercise of its jurisdiction on the merits to govern the future disposition of the child, applies to each child "coming under the court's jurisdiction." It is not be discarded as wholly inapplicable to the court's jurisdiction to enter an order concerning the child pendente lite, pending the "disposition" on the merits. The jurisdiction of the Juvenile Court is comprehensive and is to be taken as attaching at the earliest stage necessary to implement the broad rehabilitative purposes of the law. *See* Harrison v. United States, *supra* note 5, at 244, 359 F.2d at 228.

 The inquiry whether the juvenile is validly in the Receiving Home may entail the issue whether he may lawfully be detained there under conditions that are violative of the statute. The law provides, see 16 D.C.Code § 2306 (Supp. V, 1966), that a child whose custody is assumed by the court "may, pending final disposition of the case" be released in the custody of a parent or other person appointed by the court, and continues: "When not released as herein provided, the child, pending the hearing of the case, shall be detained in a place of detention provided by the Board of Commissioners of the District of Columbia or its authorized representative, subject to further order of the court." We are informed and we assume that the Receiving Home is the only place of detention hitherto provided by the Commissioners for those awaiting disposition in the Juvenile Court.[7] But that does not definitively dispose of the jurisdictional inquiry. Suppose the child were taken seriously ill and required an oxygen tent, not available at the Receiving Home. It would not be seriously supposed that jurisdiction is lacking in the Juvenile Court to permit detention in an appropriate hospital.[8] If a psychiatric condition were seriously endangering the health or perhaps life of the juvenile, there would likewise be jurisdiction in the Juvenile Court to make an appropriate detention arrangement.

 There is, of course, a vast difference between the jurisdiction of the Juvenile Court to make orders as to confinement and the possible jurisdiction of the District Court to order release on habeas corpus. But it clarifies analysis to note that in an appropriate case, say the need for removal to a hospital, the District Court is not lacking in power to release on habeas corpus if the core injustice cannot be resolved in any other way.

 Perhaps another illustration— not the case before us—would arise if the child were taken into interim custody because the preliminary assessment of the Juvenile Court reveals a child in need of psychiatric care which his parents refuse to permit, and is nevertheless put into the Receiving Home where no such care is available.

The power of inquiry on habeas corpus in these cases is no different fundamentally from the power to release on habeas corpus if a juvenile subject to the jurisdiction of the Juvenile Court is consigned or transferred, in violation of applicable law, to an institution housing adult criminals.[9]

7. *See* REPORT OF THE PRESIDENT'S COMMISSION ON CRIME IN THE DISTRICT OF COLUMBIA 639 (1966) [hereinafter cited as REPORT].

8. *See* REPORT, *supra* note 7, at 672.

9. Harris v. Kennedy, No. 17510 (D.C.Cir. Mar. 26, 1963); Kautter v. Reid, *supra* note 4; White v. Reid, D.C., 125 F.Supp. 647, 650 (1954).

This court has held it appropriate for the District Court to inquire into the suitability of the transferee institution. In Harris v. Kennedy, *supra*, a juvenile, who had been committed under the Juvenile Court Act to the National Training School and subsequently transferred by the Attorney General to a federal correctional institution pursuant to his authority under 18 U.S.C. § 4082,

■ We do not administer the Receiving Home and today's decision in no way augurs a favorable reception for a host of miscellaneous complaints concerning that facility. But the purpose stated in 16 D.C.Code § 2316(3)—to give the juvenile the care "as nearly as possible" equivalent to that which should have been given by his parents—establishes not only an important policy objective, but, in an appropriate case, a legal right to a custody that is not inconsistent with the parens patriae premise of the law.

■ Perhaps some distinction may rightly be drawn, in terms of initial inquiry, between final disposition and interim custody. We are aware that the practice of the Juvenile Court is to expedite the final disposition determinations of those juveniles who are held in interim custody, although there are unfortunately cases where interim custody is protracted.[10] That was the case with appellant, partly at least because of motions for continuances and separate trials presented by appellant's counsel. We do not infer legislative intent requiring the Juvenile Court to ponder in each case of interim custody the kind of "care" projection that may fairly be contemplated on final disposition. But where, as here, a claim is presented to that court by a juvenile alleging a need for treatment which is not being furnished, the fact that the custody is "interim" as opposed to "final" does not end the matter. The Juvenile Court, when presented with a substantial complaint, should make an appropriate inquiry to insure that the statutory criteria, as applied to that particular juvenile, are being met. The depth and scope of such an inquiry will vary with the case. In some instances a hearing may not be necessary; in others the court may have a need for the assistance and enlightenment which an evidentiary hearing affords. In any such case the Juvenile Court may, of course, appropriately consider the safety of the community together with the juvenile's needs. What it may not do, is to refuse to consider the matter at all on the ground of lack of jurisdiction.[11]

■ Our determination that the obligation of initial inquiry and action rests, in the first instance, with the Juvenile Court is consistent with the clear Congressional purpose to establish a professionally staffed, specialized court, equipped with broad powers to implement the rehabilitative purposes of the statute. That court is rightly vested with a broad range of discretion in light of its professional expertise. The essence of expertise and discretion is an informed choice between alternatives. When the expert discretion of the Juvenile Court is exercised with knowledge of the salient facts, its exercise of discretion will not be disturbed absent clear abuse. But its wide range of discretion is not a license to be arbitrary, or to refuse to see, hear or speak on the facts. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

■ That the determinations of the Juvenile Court are not immune from

---

sought to have the District Court declare the transfer invalid and order him back to the National Training School. On appeal from the District Court's summary denial, this court (Judges Danaher, Bastian and Burger) in chambers entered an order which provided in part:

"[The] order granting summary judgment in favor of appellees is hereby vacated and this case is remanded to the District Court for trial of the fact issue of whether the Federal Correctional Institution at Ashland, Kentucky, is a 'suitable and appropriate institution' (18 U.S.C. § 4082) for the confinement of juveniles committed under the Juvenile Court Act."

10. See REPORT, supra note 7, at 641, 677.

11. As already noted, we understand the District Court's dismissal was on precisely such assumption of lack of jurisdiction—a ground we reject. The record before us does not show the basis, if any was disclosed, on which the Juvenile Court denied appellant's request for a hearing on the suitability of the Receiving Home.

overview is underscored by the fact that Congress has provided for appeals to the D. C. Court of Appeals. 11 D.C.Code § 772 (1961). And in exceptional cases habeas corpus may lie to test the validity of detention, even where detention is in the Receiving Home pending final disposition. Insofar as the District Court ruled that it was without jurisdiction to make such an inquiry, its ruling is disapproved.

██ Subsequent to the habeas corpus proceedings and before appellant's counsel brought the matter to our attention, the Juvenile Court proceeded to trial and found appellant "involved" on an allegation of the petition.[12] We were advised that the Juvenile Court entered an order committing appellant to the National Training School conditioned on our approval pursuant to this court's Rule 29.[13] Cf. Bolden v. Clemmer, 111 U.S. App.D.C. 392, 298 F.2d 306 (1961). Seeing no basis for concluding that the interest of justice would have been served by our continuing appellant's confinement at the Receiving Home, we entered an order permitting the Juvenile Court's disposition order to become operative.

Appeal dismissed as moot.

12. Following various delays occasioned by the Juvenile Court's congested docket and continuances granted on application of his attorney, appellant stood trial on one allegation of the petition. He was found "not involved". At a second trial, on another allegation, he was found "involved" and his confinement at the Receiving Home was continued pending a disposition hearing in the Juvenile Court.

13. In pertinent part, our Rule 29 provides:
(a) Pending review of a decision refusing a writ of habeas corpus, or refusing a rule to show cause why the writ should not be granted, the custody of the prisoner shall not be disturbed, except by order of the court, or of a judge thereof, upon a showing that custodial considerations require his removal. In such cases, the order of the court or judge will make appropriate provision for substitution so that the case will not become moot.

(b) Pending review of a decision discharging a writ of habeas corpus after it has been issued, or discharging a rule to show cause why such a writ should not be granted, the prisoner may be remanded to the custody from which he was taken by the writ, or detained in other appropriate custody, or enlarged upon recognizance with surety, as to the court or judge rendering the decision may appear fitting in the circumstances of the particular case.

 * * * * *

(d) Except as elsewhere provided in this rule, the initial order respecting the custody or enlargement of the prisoner pending review, as also any recognizance taken, shall be deemed to cover not only the review in this court but also the further possible review in the Supreme Court; and only where special reasons therefor are shown to this court or to a judge thereof will that order to be disturbed, or any independent order made in that regard.