**In the Matter of Jesse Gene ELMORE.**
**No. 20497.**

United States Court of Appeals
District of Columbia Circuit.
May 23, 1967.

---

Mr. John E. Vanderstar, Washington, D. C., with whom Mr. Edmund E. Fleming, Washington, D. C., was on the brief, for petitioner.

Mr. David P. Sutton, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Charles T. Duncan, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel at the time the brief was filed, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent. Mr. Richard W. Barton, Asst. Corp. Counsel, also entered an appearance for respondent.

Before BAZELON, Chief Judge, and DANAHER and ROBINSON, Circuit Judges.

PER CURIAM:

The Juvenile Court assumed jurisdiction over our petitioner, now 15 years of age, following trial on a petition alleging that he was "habitually beyond the control of his mother."[1] Later, after a hearing on the disposition to be made,[2] it committed petitioner to the custody of the Department of Public Welfare [3] with a recommendation that the Department investigate the possibility of placing him in a facility equipped to provide "the psychological and/or psychiatric care to meet his particular needs." The District of Columbia Court of Appeals affirmed [4] and the case reaches us on a petition for allowance of a further appeal.[5] We grant the petition and remand for further proceedings outlined herein.

I

The issue which incites our remand stems from the setting in which petitioner is detained. In the Juvenile Court and on the intermediate appeal, he claimed that the dispositional hearing was procedurally infirm because the Juvenile Judge did not fully explore alternatives to commitment and, in several questions directed to petitioner's trial counsel, appeared to place on petitioner the burden of identifying such alternatives. We find it unnecessary to assay the disposition against these contentions in view of Creek v. Stone,[6] decided subsequent to the Juvenile Court's action and its affirmance, which to us has decisive bearing here.

In Creek, we carefully consider the Juvenile Court Act, noting a clear legislative purpose to establish a professionally equipped, specialized court to deal with the myriad of situations coming before it. We pointed out that the Juvenile Court is armed with broad statutory powers to the end that the community's resources may be marshaled to provide individualized care and treatment and held that "[t]he Congressional objective

---

1. See D.C.Code § 11-1551(a) (1) (B) (Supp. V 1966).

2. The Juvenile Court normally conducts its proceedings in two stages. It first ascertains the jurisdictional facts. In the event jurisdiction is assumed, it later conducts a hearing on disposition of the juvenile. D.C.Code §§ 16-2307, 16-2308 (Supp. V 1966). See generally, Report of the President's Commission on Crime

in the District of Columbia 645-47, 648 (1966). That was the course pursued in this case.

3. D.C.Code § 16-2308(a) (Supp. V 1966).

4. In re Elmore, 222 A.2d 255 (D.C.App. 1966).

5. D.C.Code § 11-321 (Supp. V 1966).

6. 126 U.S.App.D.C. ——, 379 F.2d 106 (May 1, 1967).

comprehends psychiatric care in appropriate cases." [7] Recognizing that full and imaginative use of these powers enables the Juvenile Court to fashion a dispositional decree tailored to meet the peculiar needs of a particular child, we deemed that court obligated to conduct an "appropriate inquiry" when presented with a "substantial complaint" concerning commitment.[8]

In this case, we have on the one hand an explicit finding by the Juvenile Court that petitioner needs "psychological and/or psychiatric care to meet his particular needs" while, on the other, a claim that petitioner is receiving no treatment whatever. We think this presents, within the meaning of *Creek,* a "substantial complaint" calling for "appropriate inquiry." [9]

Petitioner, of course, was not able to advance, nor either of the courts to deal with, his contentions in the light of that opinion, but we think it clear that petitioner is entitled to whatever benefits might flow from such an evaluation. "There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were

neither pressed nor passed upon by the court or administrative agency below." [10] Among these are cases "in which there have been judicial interpretations of existing law after decision below and pending appeal—interpretations which if applied might have materially altered the result." [11] For "in the exercise of our appellate jurisdiction we have power not only to correct error in the judgment under review but to make such disposition of the case as justice requires. And in determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered." [12] Such a change we may accommodate by granting an appeal solely to enable a remand for further consideration.[13]

As this case involves final disposition, as contrasted with the interim custody presented in *Creek,* we think the Juvenile Court will have need for a full development of the salient facts which an evidentiary hearing can afford. If, by reason of the time the appellate process has consumed, there has been any significant change in petitioner's condition requiring reevaluation of the initial commitment order, the Juvenile Court has power to shape its decree to reflect the

---

7. Creek v. Stone, *supra* note 6, at 4.

8. *Id.* at 8.

9. We held that the right to care " 'as nearly as possible' equivalent to that which should have been given by his parents—establishes not only an important policy objective, but, in an appropriate case, a legal right to a custody that is not inconsistent with the parens patriae premise of the law." *Id.* at 8. Thus it was that we drew support from cases such as Harris v. Kennedy, No. 17,510 (D.C.Cir. March 26, 1963), where we directed an evidentiary inquiry to ascertain whether a particular place of confinement was "suitable and appropriate" within the meaning of 18 U.S.C. § 4082. See also Tribby v. Cameron, 126 U.S.App.D.C. ——, 379 F. 2d 104 (April 14, 1967) ; Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966).

10. Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

11. *Id.* at 558–559, 61 S.Ct. 719, 722. See also Patterson v. State of Alabama, 294 U.S. 600, 606–607, 55 S.Ct. 575, 79 L. Ed. 1082 (1935) ; Goodman v. United States, 123 U.S.App.D.C. 165, 358 F.2d 532 (1966) ; Cooper v. Lish, 115 U.S. App.D.C. 291, 318 F.2d 262 (1963) ; Schaff v. R. W. Claxton, Inc., 79 U.S. App.D.C. 207, 144 F.2d 532 (1944) ; Ruppert v. Ruppert, 77 U.S.App.D.C. 65, 134 F.2d 497 (1942).

12. Patterson v. State of Alabama, *supra* note 11, 294 U.S. at 607, 55 S.Ct. at 578. See 28 U.S.C. § 2106.

13. *Ibid.* See also Mullen v. Fahey, No. 19,825 (D.C. Cir. June 1, 1966).

current facts.[14] Similarly, should it develop that the need for professional care persists, the Juvenile Court will then proceed to evaluate the present confinement in light of the standards announced in *Creek,* utilizing its expertise and discretion secure in the knowledge that it is amply authorized to fulfill the rehabilitative purposes of the Act.

## II

Petitioner also asks us to definitively construe the "beyond control" sections of the Act.[15] But while the parties and the District of Columbia Court of Appeals treated this exclusively as a "beyond control" case, we are not entirely certain that the section to which petitioner refers was the sole foundation for the Juvenile Court's assumption of jurisdiction. At the conclusion of the trial, the Juvenile Judge said:

> "The Court has listened to the evidence presented in this case and is of the opinion that Jesse Elmore is within the jurisdiction of the Court for the following reasons: First [the] evidence sustains beyond any question of mine in this Court and by a preponderance thereof that Jesse Elmore has been truant in school. Secondly, the evidence sustains by a preponderance thereof that he is without adequate supervision in his home, or was during the period in question. And thirdly, the evidence sustains that he has been habitually beyond the control that

was attempted to be exerted by his mother. And for these reasons the Court finds that he is within its jurisdiction."

██ It is not unreasonable to read this jurisdictional finding as embracing the judge's conclusion that petitioner was "habitually truant from school," [16] *and* "without adequate parental support or care," [17] *and* "habitually beyond the control of his parent." [18] We deem it inappropriate to reach construction of the "beyond control" section unless and until it is certain that it was the only basis upon which the Juvenile Court was empowered to act. Petitioner will be free on the remand to seek clarification in this connection and to raise with precision any legal objections he might have. The Juvenile Court will be in position to decide in the first instance the several points now urged by petitioner.

██ Should jurisdiction be found to rest on the three alternative statutory sections, questions of fair notice and opportunity to defend would be presented.[19] If, on the other hand, it is rested solely on the "beyond control" provision, the Juvenile Court should consider petitioner's argument that such a conclusion is at odds with the finding that petitioner was without adequate parental supervision.[20] In either event, both the practical effect and the legal permissibility of the "delinquency" finding can be probed.[21] We do not, of course, in this ab-

14. D.C.Code § 16–2309 (Supp. V. 1966); In re Lem, 164 A.2d 345 (D.C.Mun.App. 1960).

15. *Supra* note 1.

16. D.C.Code § 11–1551(a) (1) (C) (Supp. V 1966).

17. D.C.Code § 11–1551(a) (1) (F) (Supp. V 1966).

18. D.C.Code § 11–1551(a) (1) (B) (Supp. V 1966).

19. The petition, filed pursuant to D.C. Code § 16–2302 (Supp. V 1966), alleged only that petitioner was habitually beyond control although it was supported by a

factual allegation that he had been truant from school. Prior to trial, the Juvenile Court denied petitioner's motion to change the nature of the proceeding to one for parental neglect. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

20. Department of Health, Education and Welfare, Standards for Juvenile and Family Courts 86 (1966).

21. In an earlier "beyond control" proceeding, petitioner was found to be a "dependent" child. In this case, he was adjudged a "delinquent." These are terms not found in our statutes, although the

stract context, undertake to resolve or suggest answers to these potentially perplexing questions. We do say, however, that should these issues develop on remand, the Juvenile Court's delineation of its views, by memorandum opinion or otherwise, would put appellate courts, if further review is required, in position to know exactly what was decided and why.[22]

An appropriate order will be entered granting the petition for allowance of an appeal and remanding this case to the Juvenile Court for proceedings consistent with this opinion.

So ordered.

DANAHER, Circuit Judge (dissenting):

In my view, the previous disposition of questions properly presented does not warrant the exercise of our discretion for allowance of this appeal. Moreover, eschewing the "abstract" approach, were we to undertake to penetrate the Juvenile Court's practical, informed and expert appraisal of Elmore's problem, we should be bound to say on this record that the affirmance by the District of Columbia Court of Appeals was fully justified. I think we should support the actions taken by the two courts most intimately concerned with the vast volume of such cases arising in this jurisdiction.

Accordingly I do not join my colleagues.

---

Juvenile Court has promulgated a definition of the terms. Juv.Ct.Ann.Rep. 14 (1966). The practical effect of a "dependent," as opposed to a "delinquent," determination is not clear to us. Perhaps a "delinquent" child is isolated from "dependent" children and receives different care or treatment. See Report of the President's Commission on Crime in the District of Columbia 686 (1966). The Supreme Court has highlighted other consequences that might flow from such a

finding. See In re Gault, *supra* note 19, 387 U.S. 1, 86 S.Ct. 1045, 18 L.Ed.2d 527 (1967). We leave consideration of this issue for development on the remand where the pertinent facts can be developed and the Juvenile Court can express its views.

22. Cf. Kent v. United States, 383 U.S. 541, 561, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). See also In re Gault, *supra* note 19, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).