**GOVERNMENT OF THE VIRGIN ISLANDS**
**IN THE INTEREST OF:**
**"J", Minor**

## JDR 63/1976

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

March 30, 1977

257

FEUERZEIG, *Judge*

### MEMORANDUM AND ORDER

"J", a minor, age 16, is once again before this Court, this time, in connection with charges that on August 26, 1976, at about 4:45 a.m. he "did with intent to commit an offense therein break and enter Government Personnel Department at which time no human being was present, all in violation of Title 14 of the Virgin Islands Code, Section 444(1), Burglary in the Third Degree." In view of the minor's lengthy history of adjudications as a juvenile delinquent and his obvious recidivism, the Government of the Virgin Islands filed a motion to transfer the pending charges to the District Court pursuant to 4 V.I.C. § 176:

> If a child 16 years of age or older is charged with an offense which would be a crime if committed by a person 18 years of age or over, and if the offense is one in which violence was committed on another person, it shall commit the child for proper criminal

proceedings to the District Court; but no child under 16 years of age shall be so committed. *In all other cases where such offense is not one involving violence to the person of another, commission of such child to the District Court shall be discretionary with the Territorial Court.* (Emphasis added.)

The Motion to Transfer came on for a hearing on Wednesday, February 8, 1977. The Government relied on the testimony of Eugene Hatcher, a social worker with the Department of Social Welfare since August of 1976, and the testimony of Reuben Rabsatt, a police officer with the Department of Public Safety. It was stipulated that "J" was born on May 10, 1960. Thus he clearly falls within the purview of 4 V.I.C. § 176, as a child between the ages of 16 and 18. Moreover, there is no dispute that "J" is charged with violating 14 V.I.C. § 444(1), burglary in the third degree.

██ Given these ultimate facts it becomes necessary to apply the teachings of Government of the Virgin Islands v. Santana, 9 V.I. 154 (D.V.I. 1972). Although the statute at issue in the Santana case has since been amended, it is the belief of this Court that the teachings of Santana still are applicable in deciding whether this Court should waive jurisdiction.

Public policy can legitimately permit such waivers of jurisdiction. Normally the Juvenile Court exercises jurisdiction over all offenses committed by persons under the age of eighteen years. This permits rehabilitative and non-criminal treatment of young persons, free of publicity and the damaging consequences of a permanent and perhaps premature criminal record. As has been said of a similar statute, "[i]t is implicit in [this] scheme that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases." Kent v. United States, 383 U.S. 541, 560–61 (1966), quoting with approval Harling v. United States, 295 F.2d 161, 164–65 (D.C. Cir. 1961). It is nonetheless recognized that some juveniles are exceptionally mature and hardened and that it would benefit neither them nor society at large to limit corrective measures to those contemplated for the average child.

9 V.I. at 158–159. In deciding whether to transfer, Santana requires this Court to make findings on each of the criteria listed in the Appendix to the Supreme Court's opinion in Kent, 9 V.I. at 171.

Accordingly, I will consider each factor seriatim.

(1) The seriousness of the alleged offense and whether the protection of the community requires the transfer.

Clearly, the present offense with which the minor is charged, burglary in the third degree, is a serious offense to the community. While it is not a heinous crime, the Governor's Anti-Crime Act of 1977, Bill No. 7418, now before the Legislature, attests to the seriousness of the offense.

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated or wilful manner.

There is nothing to indicate that the alleged offense was committed in an aggressive, violent, premeditated or wilful manner. In fact, none of the previous offenses for which the minor has been adjudicated a delinquent, except the one of simple assault, indicate a violent or aggressive attitude on the part of the minor.[1] In addition, Mr. Hatcher testified that only under peer group pressure, to which youths of "J" 's age of course are susceptible, would violence by him be likely to result.

(3) Whether the alleged offense was against persons or against property, greater weight to be given to offenses against persons, especially if personal injury resulted.

The offense with which he is charged was against property and not against persons, and thus this factor as well as (2) would dictate against a transfer.

(4) The prosecutive merit of the complaint.

Officer Rabsatt testified that he signed the complaint against the minor on the grounds that one Jellice Turnbull,

---

[1] See footnote 3, pg. 263, infra.

who was arrested in the vicinity of the alleged burglary, and who was apprehended with some goods in his possession, told the police that "J" was also involved in the crime with him. "J" also was apprehended near the scene of the alleged crime. The officer said that Jellice Turnbull was not then in custody, and his specific location was not known. Officer Rabsatt did say, however, that Jellice Turnbull still is known to be in the Virgin Islands. Thus, I cannot presume, as the minor's counsel suggested, that Jellice Turnbull will not be an available witness.[2] In Kent, the Court stated the question was whether there was prosecutive merit upon which a grand jury may be expected to return an indictment. In the Virgin Islands, we do not have a grand jury, and the only question is whether an information would be filed. There is no doubt in this Court's opinion that an information would be filed in this instance. Moreover, I believe a grand jury also would return an indictment based upon the facts as outlined by Officer Rabsatt.

(5) The desirability of the trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with the crime in the U.S. District Court of the Virgin Islands.

Factor number 5 above is not relevant because there is no question at this time of disposition of an entire offense in one court.

(6) The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude, and pattern of living.

Mr. Hatcher testified that "J" enjoys a good relationship with his mother. Despite this, there is a loose home

---

[2] This Court also takes judicial notice of the fact on March 11, 1977, in connection with Criminal No. 56/1977, Jellice Turnbull appeared before the Honorable Eileen R. Petersen. See Record of Proceedings in Criminal No. 56/1977.

structure that provides adequate care, but inadequate supervision. Moreover, the minor's home, in the opinion of Mr. Hatcher, lacks sufficient adult or masculine contacts to provide the minor with needed guidance. This last point was particularly stressed by the Department of Social Welfare in a 1976 report. " 'J' 's entire life, to some extent, can be described as a search for a father he has never known. The seriousness of this significant loss is exhibited time and again by 'J' 's ego identity conflict."

Since he has been in the care of the Department of Social Welfare the youth "has been appraised as a minor with serious emotional/psychological problems and disturbing mental disabilities." To further compound matters, Social Welfare states, " 'J' has grown rather smug and settled in a 'successful' life he has devised for himself. These severely questionable *activities* are a mish-mash based on hustling, gambling, cadging and any sort of under-the-table bargaining. . . . Whenever he enters the Office of the Department he is in possession of huge sums of monies." Department of Social Welfare Court Summary pg. 3, May 24, 1976.

(7) The record and previous history of the juvenile including previous contracts with the Department of Social Welfare, other law enforcement agencies, juvenile courts, and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

"J" 's history with the Department of Social Welfare is anything but fortuitous for one so young. His first contact with that Department dates back to 1970. Since then he has gone in and out of the Department on repeated occasions with his finally being placed in the custody of the Department of Social Welfare on March 11, 1976. He was adjudicated as a juvenile delinquent as recently as February 2, 1977, before the Honorable Eileen R. Petersen in J.D.R. 1083. This was the fifth time he was adjudicated as a

delinquent.[3] In addition, on June 17, 1975, he was placed in the temporary custody of the Department of Social Welfare and incarcerated in the then existing Insular Training School in St. Croix on the grounds that he was physically dangerous to himself and to his family. I also feel compelled to take judicial notice of the numerous reports prepared for the Court after he was adjudicated a delinquent, some of which have been cited supra. Rule 209(b), Federal Rules of Evidence. The latest Department of Social Welfare report, dated March 7, 1977, was prepared after his most recent adjudication and states that the minor

has been placed intermittently as his needs required at the Insular Training School, Group Home, and the Youth Care Center. While he has been in our care, attempts have been made to school him, first, at Insular Training School's "un-graded" class system. When Mental Health tests revealed "J"'s need for education as an emotionally disturbed youngster, Social Services provided for his placement in a special education class at Commandant Gade School. He was later placed at Wayne Aspinall Jr. High and in a special education class of Wayne Aspinall School. During these placement periods, "J" distinguished himself with outstanding records of truancy, misconduct, abusive behavior, fights and general malfunctioning.

(8) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged

---

[3] "J" has been adjudicated a delinquent on the following charges on the following occasions:

| CASE NO. | DATE OF ADJUDICATION AS DELINQUENT | CODE VIOLATION |
|---|---|---|
| J.D.R. 43/1975 | September 24, 1975 | Forgery, 14 V.I.C. § 791(1) |
| J.D.R. 55/1975 | February 4, 1976 | Grand Larceny, 14 V.I.C. § 1083 Petit Larceny, 14 V.I.C. § 1084 |
| J.D.R. 26/1976 | April 22, 1976 | Disturbing the Peace, 14 V.I.C § 622(1) |
| J.D.R. 39/1976 | July 14, 1976 | 3rd Degree Burglary 14 V.I.C. § 444(1) |
| J.D.R. 83/1976 | February 2, 1977 | Petit Larceny, 14 V.I.C. § 1084 |

offense) by the use of procedures, services and facilities currently available to the juvenile division of this Court.

Again I have to rely on the testimony of the social worker, Mr. Hatcher. He stated on behalf of the Department of Social Welfare that he had been trying to make arrangements for the minor to obtain rehabilitation at a facility off-island. Mr. Hatcher said such a facility would be available if the minor could qualify under the vocational rehabilitation program and that the minor was undergoing evaluation to gain admission. That effort, however, the March 3, 1977, Department of Social Welfare report reveals has been unsuccessful. This was only one of many efforts that the Department of Social Welfare has said it has made to provide treatment and/or rehabilitation for the minor, all to this date to no avail.

Existing facilities in the Virgin Islands offer no hope that "J" can be rehabilitated or be placed in a setting sufficiently structured to prevent the occurrence of still other delinquent acts. At present, there is no juvenile facility available other than the pre-trial detention area which has been set aside at Fort Christian in St. Thomas, and this Court views that facility as totally inadequate to meet the needs of this minor. Consequently, there is no facility available in the Virgin Islands to help this youth. Mr. Hatcher did say that if a social worker was available 18 hours a day a sufficiently structured setting could be provided to rehabilitate this minor. It also is clear, however, that no funds are available to accomplish this, nor is there sufficient manpower in the Department of Social Welfare to permit such time to be devoted to "J".

Thus, this Court again is confronted with the perennial problem which it has faced the last few years—that is, the unavailability in the Virgin Islands of adequate rehabilitative facilities or sufficiently structured settings to give

individuals such as "J" an appropriate environment in which to receive appropriate care and treatment.

■ Thus, if "J" is found to have committed the alleged act, the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation by use of currently available facilities in the Virgin Islands are virtually nil.[4]

Finally, the Court must also consider the introductory paragraph of the Appendix of the Kent decision where it is stated:

An offense within the statutory limitations will be waived [in this case transferred] if it has prosecutive merit, and if it is heinous or an aggravated character, *or even though less serious—if it represents a pattern of repeated offenses which indicates that the juvenile may be beyond rehabilitation under juvenile court procedures, or if the public needs the protection afforded by such action.* 383 U.S. 541, 566 (Emphasis added).

---

[4] The situation at present in the Virgin Islands is truly deplorable. That this is so was fully revealed by the Virgin Islands Law Enforcement Planning Commission proposal of October 12, 1976, entitled Proposed Format for the Development of a Comprehensive Juvenile Correctional Program/Facility. In the open paragraph it is stated:

The present Virgin Islands Criminal Justice System is *incapable* of dealing effectively with Part I (larceny, burglary, auto theft, aggravated assault, robbery, rape and homicide) juvenile offenders. The reasons for this critical situation are several, chief among which is the fact that the existing juvenile justice system is really an "un-system" lacking coordination, responsibility and accountability. This problem is compounded by the total lack of any secure correctional facility suitable for adjudicated delinquents. Correlative with the lack of detention facilities is the need for dispositional alternatives to institutionalization.

The minor has not raised the issue of whether he has a constitutional or statutory right to treatment, nor has he contended that the Government has a duty to provide sufficient facilities here in the Virgin Islands or make appropriate arrangements to provide such treatment. Consequently, the court has not attempted to decide that issue. I do, however, feel compelled to comment that the government under our juvenile laws, 5 V.I.C. §§ 2501–2503, must make provisions for the treatment of minors such as "J". Failure to do so may be an abridgement of a minor's rights given the rehabilitative purposes of the establishment of the juvenile division within this court. This is particularly so in view of 5 V.I.C. § 2513, which requires that when a "child is removed from the control of his parents the court shall secure for him care as nearly as possible equivalent to that which should have been given him by them." See, e.g. Creek v. Stone, 379 F.2d 106 (D.C. Cir. 1967); White v. Reid, 125 F.Supp. 647 (D.D.C. 1954); In re Elmore, 314 N.Y.S.2d 356 (Fam. Ct. Queens City. 1970); Smith v. State, 444 S.W.2d 941 (Tex. Ct. App. 1969).

■ Clearly, the pattern of conduct of "J" indicates that the juvenile is beyond rehabilitation with the facilities and alternatives available in the Virgin Islands. The conclusion is unavoidable, therefore, that the public needs protection.

As Santana pointed out:

It has been said that a juvenile's prior history is not itself a basis for waiver, but becomes relevant only insofar as it casts light on his probable future conduct. Haziel v. U.S., 404 F.2d 1275, 1282 (Cir. 1968).

9 V.I. at 165 (1972). Here as in Santana the evidence is the same; although there is a capability to rehabilitate under conditions in the Continental United States where suitable structured settings are available, there is no chance for this under existing conditions in the Virgin Islands. Therefore, I reluctantly must find that a transfer to the District Court is the only means by which the public and society can be protected.

WHEREFORE, it is this 30th day of March, 1977,

ORDERED, ADJUDGED and DECREED that the above-captioned action be, and the same hereby is, transferred to the District Court of the Virgin Islands pursuant to 4 V.I.C. § 176.