Opinion for the Court filed by Circuit Judge GINSBURG.
Concurring opinion filed by Circuit Judge KAVANAUGH.
Opinion concurring in the judgment in part and dissenting in part filed by Circuit Judge GRIFFITH.
GINSBURG, Circuit Judge:
Nine Uighurs held at Guantanamo Bay, in order to challenge their detention, petitioned the district court for a writ of habe-as corpus. Asserting that they feared being transferred to a country where they might be tortured or further detained, they also sought interim relief requiring the Government to provide 30 days’ notice to the district court and to counsel before transferring them from Guantanamo. The district court entered the requested orders. Kiyemba v. Bush, No. 1:05cv1509 (Sept. 13, 2005); Mamet v. Bush, No. 1:05cv1602 (Sept. 30, 2005). The Government appealed each of the orders and we consolidated its appeals. In light of the Supreme Court’s recent decision in Munaf v. Geren, — U.S. -, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008), we now reverse.
I. Background
In granting the request for 30 days’ notice of any planned transfer, the district court in Mamet noted the detainee’s fear of being tortured. In Kiyemba the district court did not advert to the detainees’ fear of harm but entered an order requiring pre-transfer notice lest removal from Guantanamo divest the court of jurisdiction over the detainees’ habeas petitions.
While this appeal was pending, the Congress passed the Military Commissions Act (MCA), § 7 of which provided:
No court ... shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.
Pub.L. No. 109-366, 120 Stat. 2600, 2635-36 (2006) (codified at 28 U.S.C. § 2241(e)(1)). Accordingly, we dismissed the cases for lack of subject matter jurisdiction. Kiyemba v. Bush, 219 Fed.Appx. 7 (D.C.Cir.2007). In Boumediene v. Bush, however, the Supreme Court held § 2241(e)(1) “effects an unconstitutional suspension of the writ” of habeas corpus. - U.S. -, 128 S.Ct. 2229, 2274, 171 L.Ed.2d 41 (2008). In light of that decision, we vacated our judgment of dismissal and reinstated the Government’s appeal. Kiyemba, No. 05-5487 (July 31, 2008).*
*512 II. Subject Matter Jurisdiction
We begin with the Government’s argument that the MCA bars the district court from exercising jurisdiction in their ongoing habeas cases over claims related to the detainees’ potential transfer. The Government contends the Supreme Court in Boumediene held the first provision of § 7 of the MCA, 28 U.S.C. § 2241(e)(1), unconstitutional only insofar as it purported to deprive the district court of jurisdiction to hear a claim falling within the “core” of the constitutional right to habeas corpus, such as a challenge to the petitioner’s detention or the duration thereof. According to the Government’s theory, because the right to challenge a transfer is “ancillary” to and not at the “core” of habeas corpus relief, § 2241(e)(1) still bars the district court from exercising jurisdiction over the instant claims. In support of its argument, the Government invokes the rule that ordinarily a court should invalidate as little of an unconstitutional statute as necessary to bring it into conformity with the Constitution. See Ayotte v. Planned Parenthood of N. New Eng., 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) (“[W]e try not to nullify more of a legislature’s work than is necessary.... Accordingly, the normal rule is that partial, rather than facial, invalidation is the required course.” (internal quotation marks omitted)).
In response, the detainees maintain it was no accident that the Court in Boume-diene avoided making just the sort of fine distinction the Government proposes. They point specifically to the Court’s caution in Ayotte that “making distinctions in a murky constitutional context, or where line-drawing is inherently complex, may call for a far more serious invasion of the legislative domain than we ought to undertake.” Id. at 330, 126 S.Ct. 961 (internal quotation marks omitted).
We think the detainees have the better of the argument. The Court in Boume-diene did not draw (or even suggest the existence of) a line between “core” and “ancillary” habeas issues, neither of which terms appears in the opinion (apart from the innocuous observation that “Habeas is, at its core, an equitable remedy”). Rather, the Court stated simply that § 2241(e)(1) “effects an unconstitutional suspension of the writ.” 128 S.Ct. at 2274.[1] Accordingly, we read Boumediene to invalidate § 2241(e)(1) with respect to all habeas claims brought by Guantanamo detainees, not simply with respect to so-called “core” habeas claims.[2]
The Government next argues the second provision of MCA § 7 stripped the district court of jurisdiction. That provision eliminates court jurisdiction over “any other action against the United States or its agents relating to any aspect of the ... transfer” of a detainee. 28 U.S.C. § 2241(e)(2). This case does not come within the reach of § 2241(e)(2), however. *513 That provision applies by its terms to “any other action” — meaning other than a petition for a writ of habeas corpus, which is the subject of § 2241(e)(1). The detainees’ claims are not in the nature of an action barred by § 2241(e)(2) because, based upon longstanding precedents, it is clear they allege a proper claim for habeas relief, specifically an order barring their transfer to or from a place of incarceration. See Benson v. McMahon, 127 U.S. 457, 462, 8 S.Ct. 1240, 82 L.Ed. 234 (1888) (reviewing, on petition for writ of habeas corpus, claim of unlawful extradition); Ward v. Rutherford, 921 F.2d 286, 288 (D.C.Cir.1990) (“[Ajctions taken by magistrates in international extradition matters are subject to habeas corpus review by an Article III district judge”); INS v. St. Cyr, 538 U.S. 289, 305-08, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (detailing long history of reviewing deportations per petition for habeas); In re Bonner, 151 U.S. 242, 255-56, 14 S.Ct. 323, 38 L.Ed. 149 (1894); Miller v. Overholser, 206 F.2d 415, 419-20 (D.C.Cir.1953) (“We think it has been settled since ... Bonner that the writ is available to test the validity not only of the fact of confinement but also of the place of confinement”).
Because a potential transfer out of the jurisdiction of the court is a proper subject of statutory habeas relief, § 2241(e)(2) does not apply to and therefore does not deprive the court of jurisdiction over the claims now before us. Even “where a habeas court has the power to issue the writ,” however, the question remains “ ‘whether this be a case in which [that power] ought to be exercised.’ ” Munaf, 128 S.Ct. at 2221 (quoting Ex parte Watkins, 28 U.S. (3 Pet.) 193, 201, 7 L.Ed. 650 (1830)). We turn, accordingly, to the merits of the petitioners’ claims.
III. Proper Grounds for Habeas Relief
A court considering a request for preliminary relief must examine four factors: (1) the moving party’s likelihood of success on the merits; (2) irreparable injury to the moving party if an injunction is denied; (3) substantial injury to the opposing party if an injunction is granted; and (4) the public interest. Belbacha v. Bush, 520 F.3d 452, 459 (D.C.Cir.2008). We review for abuse of discretion the district court’s weighing of these factors; insofar as “the district court’s decision hinges on questions of law,” however, our review is de novo. Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C.Cir.1998) (internal quotation marks omitted). If the moving party can show no likelihood of success on the merits, then preliminary relief is obviously improper and the appellant is entitled to reversal of the order as a matter of law. See Munaf, 128 S.Ct. at 2220.[3]
The detainees here seek to prevent their transfer to any country where they are likely to be subjected to further detention *514 or to torture. Our analysis of their claims is controlled by the Supreme Court’s recent decision in Munaf. In that case, two American citizens held in the custody of the United States military in Iraq petitioned for writs of habeas corpus, seeking to enjoin the Government from transferring them to Iraqi custody for criminal prosecution in the Iraqi courts. Id. at 2214-15. The Court held the district court had jurisdiction over the petitions, but that it could not enjoin the Government from transferring the petitioners to Iraqi authorities. Id. at 2213. As we explain below, Munaf precludes a court from issuing a writ of habeas corpus to prevent a transfer on the grounds asserted by the petitioners here; therefore the detainees cannot prevail on the merits of their present claim and the Government is entitled to reversal of the orders as a matter of law.[4]
A. Fear of Torture
Like the detainees here, the petitioners in Munaf asked the district court to enjoin their transfer because they feared they would be tortured in the recipient country. The Court recognized the petitioners’ fear of torture was “of course a matter of serious concern,” but held “in the present context that concern is to be addressed by the political branches, not the judiciary.” Id. at 2225. The context to which the Court referred was one in which — as here — the record documents the policy of the United States not to transfer a detainee to a country where he is likely to be tortured. Id. at 2226. Indeed, as the present record shows, the Government does everything in its power to determine whether a particular country is likely to torture a particular detainee. Decl. of Pierre-Richard Prosper, United States Ambassador-at-Large for War Crimes Issues ¶¶ 4, 7-8, Mar. 8, 2005.
The upshot is that the detainees are not liable to be cast abroad willy-nilly without regard to their likely treatment in any country that will take them. Under Mu-naf, however, the district court may not question the Government’s determination that a potential recipient country is not likely to torture a detainee. 128 S.Ct. at 2226 (“The Judiciary is not suited to second-guess such determinations — determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government’s ability to speak with one voice in this area”). In light of the Government’s policy, a detainee cannot prevail on the merits of a claim seeking to bar his transfer based upon the likelihood of his being tortured in the recipient country.[5]
The detainees seek to distinguish Munaf on the ground that the habeas petitioners in that case did not raise a claim under the Convention Against Torture, as implemented by the Foreign Affairs Reform and Restructuring (FARR) Act, 8 U.S.C. § 1231 note. See Munaf, 128 S.Ct. at 2226 n. 6. That distinction is of no help to them, however, because the Congress limited judicial review under the Convention to claims raised in a challenge to a final order of removal. 8 U.S.C. § 1252(a)(4) (“Notwithstanding any other provision of law ... including section 2241 of Title 28, or any other habeas corpus provision, ... a petition for review [of an *515 order of removal] shall be the sole and exclusive means for judicial review of any cause or claim” arising under the Convention). Here the detainees are not challenging a final order of removal. As a consequence, they cannot succeed on their claims under the FARR Act, and Munaf controls.[6]
B. Prosecution or Continued Detention
To the extent the detainees seek to enjoin their transfer based upon the expectation that a recipient country will detain or prosecute them, Munaf again bars relief. After their release from the custody of the United States, any prosecution or detention the petitioners might face would be effected “by the foreign government pursuant to its own laws and not on behalf of the United States.” Decl. of Matthew C. Waxman, Deputy Assistant Secretary of Defense for Detainee Affairs ¶5, June 2, 2005. It is a longstanding principle of our jurisprudence that “[t]he jurisdiction of [a] nation, within its own territory, is necessarily exclusive and absolute.” Schooner Exch. v. McFaddon, 11 U.S. (7 Crunch) 116, 136, 3 L.Ed. 287 (1812). As the Supreme Court explained in Munaf, the “same principles of comity and respect for foreign sovereigns that preclude judicial scrutiny of foreign convictions necessarily render invalid attempts to shield citizens from foreign prosecution.” 128 S.Ct. at 2224 (quoting Brown, J., dissenting in part in Omar v. Harvey, 479 F.3d 1, 17 (D.C.Cir.2007)). Munaf therefore bars a court from issuing a writ of habeas corpus to shield a detainee from prosecution and detention by another sovereign according to its laws.
Judicial inquiry into a recipient country’s basis or procedures for prosecuting or detaining a transferee from Guantanamo would implicate not only norms of international comity but also the same separation of powers principles that preclude the courts from second-guessing the Executive’s assessment of the likelihood a detainee will be tortured by a foreign sovereign. See id. at 2225 (“Even with respect to claims that detainees would be denied constitutional rights if transferred, we have recognized that it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments”). Furthermore, the requirement that the Government provide pre-transfer notice interferes with the Executive’s ability to conduct the sensitive diplomatic negotiations required to arrange safe transfers for detainees. Prosper Decl. ¶ 10 (“Later review in a public forum of the Department’s dealings with a particular foreign government regarding transfer matters would seriously undermine our ability to investigate allegations of mistreatment or torture ... and to reach acceptable accommodations with other governments to address those important concerns”).[7]
*516 In short, “habeas is not a means of compelling the United States to harbor fugitives from the criminal justice system of a sovereign with undoubted authority to prosecute them.” Munaf, 128 S.Ct. at 2223. Therefore, the district court may not issue a writ of habeas corpus to shield a detainee from prosecution or detention at the hands of another sovereign on its soil and under its authority. As a result, the petitioners cannot make the required showing of a likelihood of success on the merits necessary to obtain the preliminary relief they here seek.
IV. Conclusion
The Supreme Court’s ruling in Munaf precludes the district court from barring the transfer of a Guantanamo detainee on the ground that he is likely to be tortured or subject to further prosecution or detention in the recipient country. The Government has declared its policy not to transfer a detainee to a country that likely will torture him, and the district court may not second-guess the Government’s assessment of that likelihood. Nor may the district court bar the Government from releasing a detainee to the custody of another sovereign because that sovereign may prosecute or detain the transferee under its own laws. In sum, the detainees’ claims do not state grounds for which habeas relief is available. The orders of the district court barring their transfer without notice during the pendency of their habeas cases therefore must be and are

Vacated.

 After oral argument in the court of appeals, the Government acknowledged in the district court that it no longer views any of the present petitioners as enemy combatants, whereupon the district court ordered them released into the United States. See In re Guantanamo Bay Detainee Litig., 581 F.Supp.2d 33 (D.D.C.2008). The Government appealed that order, which this court reversed on the ground that the political branches have "the exclusive power ... to decide which aliens may, and which aliens may not, enter the United States, *512 and on what terms.” Kiyemba v. Obama, 555 F.3d 1022, 1025 (2009).

. The Court actually referred to § 7 without specifying a particular subsection of § 2241(e) but its discussion of the Suspension Clause clearly indicates it was referring only to that part of § 7 codified at § 2241(e)(1).

. Thus, the Court necessarily restored the status quo ante, in which detainees at Guantanamo had the right to petition for habeas under § 2241. See Rasul v. Bush, 542 U.S. 466, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004); see also Boumediene, 128 S.Ct. at 2266 (identifying § 2241 as "the habeas statute that would govern in MCA § 7’s absence”). There is, therefore, no need to decide today whether the present petitions come within "the contours and content of constitutional habeas,” Dis. Op. at 523. See INS v. St. Cyr, 533 U.S. 289, 301 n. 13, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (noting that "what the Suspension Clause protects” is a "difficult question”).

. The detainees argue the district court in Kiyemba correctly issued the injunction — regardless of their ability to make a showing on the four factors for granting preliminary relief — in order to protect the court’s jurisdiction over their underlying claims of unlawful detention. In defense of the district court's rationale, the detainees rely upon the All Writs Act, 28 U.S.C. § 1651 (federal courts “may issue all writs necessary or appropriate in aid of their respective jurisdictions”), and upon our opinion in Belbacha, but they overstate the holding in that case. In Belbacha, we held that "when the Supreme Court grants certiorari to review this court’s determination that the district court lacks jurisdiction, a court can, pursuant to the All Writs Act ... and during the pendency of the Supreme Court’s review, act to preserve the status quo,” but only, we added, "if a party satisfies the [four] criteria for issuing a preliminary injunction.” 520 F.3d at 457. Belbacha therefore provides no basis for relieving the detainees of the need to satisfy the standard for a preliminary injunction, which, as discussed below, they have failed to do.

. For present purposes, we assume arguendo these alien detainees have the same constitutional rights with respect to their proposed transfer as did the U.S. citizens facing transfer in Munaf. They are not, in any event, entitled to greater rights.

. As in Munaf, we need not address what rights a detainee might possess in the "more extreme case in which the Executive has determined that a detainee is likely to be tortured but decides to transfer him anyway.” 128 S.Ct. at 2226.

. Munaf concerned a specific transfer, but the transferee sovereign's likely treatment of the petitioners was not material to its holding. Contrary to the statement in the dissent, the Court gave not merely "substantial weight to the [GJovernment's determination that the proposed transfer was lawful,” Dis. Op. at 526; it held the judiciary cannot look behind the determination made by the political branches that the transfer would not result in mistreatment of the detainee at the hands of the foreign government. 128 S.Ct. at 2225, 2226.

. Our dissenting colleague agrees the detainees cannot prevail on a claim based upon their likely treatment by a foreign sovereign acting pursuant to its own laws. See Dis. Op. at 525 (“[T]he [G]overnment has submitted sworn declarations assuring the court that any transfer will result in release from U.S. authority. If the [G]overnment's representations are accurate, each transfer will be law *516 ful.”). Nor can they prevail on the ground that the foreign sovereign is an agent of the United States merely because, with respect to detainees who are — unlike the present petitioners — regarded as enemy combatants, the Government engages in a dialogue "to ascertain or establish what measures the receiving government intends to take pursuant to its own domestic laws and independent determinations that will ensure that the detainee will not pose a continuing threat to the United States and its allies,” Waxman Decl. ¶ 5. The dissent takes note of the Government’s statement that "under appropriate circumstances,” it transfers detainees "to the control of other governments for continued detention,” see Dis. Op. at 525, but, as the Government explains, "[i]n all such cases ... the individual is detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States,” Waxman Decl. ¶ 5. Whether, acting pursuant to its own laws, a "foreign nation will continue detention of the petitioners,” Dis. Op. at 525, is precisely the inquiry Munaf forbids this court from undertaking.
This case involves the Government’s proposed release from U.S. custody of detainees whom the Government no longer regards as enemy combatants. It does not involve — and therefore, unlike our dissenting colleague, we express no opinion concerning- — the transfer of detainees resulting in their "continued detention on behalf of the United States in places where the writ does not extend,” Dis. Op. at 524. The Government represents that it is trying to find a country that will accept the petitioners and, in the absence of contrary evidence, we presume public officers "have properly discharged their official duties.” See United States v. Chem. Found., Inc., 272 U.S. 1, 15, 47 S.Ct. 1, 71 L.Ed. 131 (1926). In view of the Government's sworn declarations, and of the detainees’ failure to present anything that contradicts them, we have no reason to think the transfer process may be a ruse — and a fraud on the court — designed to maintain control over the detainees beyond the reach of the writ.