Sandra K. OMAR et al., Petitioners,

v.

Pete GEREN et al., Respondents.

Civil Action No. 05–2374 (RMU).

United States District Court,
District of Columbia.

Sept. 28, 2009.

Jonathan L. Hafetz, American Civil Liberties Union Foundation, Aziz Huq, New York, NY, Susan L. Burke, Burke Oneil LLC, Washington, DC, for Petitioners.

Stephen J. Buckingham, U.S. Department of Justice, Washington, DC, for Respondents.

## *MEMORANDUM OPINION*

### GRANTING THE RESPONDENTS' MOTION TO DISMISS THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS

RICARDO M. URBINA, District Judge.

## I.  INTRODUCTION

This matter is before the court on the respondents' motion to dismiss the petitioners' amended petition for a writ of habeas corpus. The petitioner,[1] an American citizen detained in Iraq by the United States military, commenced these proceedings to prevent his transfer to the custody of Iraqi authorities to face criminal charges. In his amended petition, the petitioner principally contends that he is entitled to such relief because his transfer would violate the Foreign Affairs Reform and Restructuring Act ("the FARR Act"), which implements domestically the Convention Against Torture ("CAT") and prohibits the government from transferring an individual to a country in which he or she will be subject to torture. The respondents move to dismiss the amended petition, arguing that the amended petition fails to state a claim on which relief can be granted.

The court concludes that because the FARR Act limits judicial review to claims challenging a final order of removal by immigration authorities—which is not the case here—the statute does not provide the petitioner a grounds for habeas relief. In addition, the court concludes that the other bases for relief asserted in the

---

1. There are three petitioners in this case, two of whom are acting as "next friends" of petitioner Shawqi Ahmad Omar. Because Shawqi Ahmad Omar is the only petitioner facing transfer to Iraqi custody, the court refers to him as the "petitioner" in the singular.

amended petition are foreclosed by the Supreme Court's ruling in *Munaf v. Geren*, 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008). Accordingly, the court grants the respondents' motion to dismiss the amended petition.

## II. FACTUAL & PROCEDURAL BACKGROUND

The petitioner is an American citizen detained in Iraq by the Multinational Force—Iraq ("MNF–I"), based on his suspected role in facilitating insurgent activities.[2] Respts' Mot. to Dismiss the Am. Pet. ("Respts' Mot.") at 2–3. On December 12, 2005, the petitioner's wife and son filed a next-friend habeas corpus petition on his behalf in this court. Pet. For Writ of Habeas Corpus ("Pet.") ¶ 2. On February 2, 2006, after receiving an e-mail from the respondents stating that "a determination was previously made to refer his case to the Central Criminal Court of Iraq," counsel for the petitioner filed a motion for an *ex parte* temporary restraining order ("TRO") to prevent the transfer. Petr's Suppl. Mem. in Supp. of Mot. for a TRO at 3. On February 3, 2006, the court granted that motion and issued a temporary restraining order valid until February 13, 2006. Order Granting *Ex Parte* TRO (Feb. 3, 2006). On February 13, 2006, the court granted the motion for a preliminary injunction, and ordered that "the respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them … not remove the petitioner" from United States custody. Order Granting Prelim. Inj. (Feb. 13, 2006).

On review, the Circuit affirmed the order granting the motion for a preliminary injunction. *Omar v. Harvey*, 479 F.3d 1

(D.C.Cir.2007), *reh'g denied en banc*, (May 24, 2007). The Supreme Court subsequently granted the respondents' petition for a writ of certiorari and consolidated the appeal with a separate petition for a writ of certiorari granted in an action captioned *Munaf v. Geren*. See *Omar v. Harvey*, 479 F.3d 1 (D.C.Cir.2007), *cert. granted sub nom. Geren v. Omar*, 552 U.S. 1074, 128 S.Ct. 741, 169 L.Ed.2d 578 (2007). On June 12, 2008, the Supreme Court vacated the preliminary injunction and remanded the case for further proceedings. *Munaf v. Geren*, 553 U.S. 674, 128 S.Ct. 2207, 2228, 171 L.Ed.2d 1 (2008), *reh'g denied*, —— U.S. ——, 129 S.Ct. 19, 171 L.Ed.2d 922 (Aug. 18, 2008).

On July 24, 2008, the petitioner filed an amended petition for a writ of habeas corpus, asserting claims under the FARR Act, the Fifth and Eighth Amendments to the U.S. Constitution, the Citizen Non–Detention Act and international law. See *generally* Am. Pet. for Writ of Habeas Corpus ("Am.Pet."). At the heart of the petitioner's amended petition is his contention that he would likely be tortured if transferred to the custody Iraqi authorities. *Id.* On November 25, 2008, the respondents filed the instant motion to dismiss, asserting that the petitioner failed to state a claim under the FARR Act and that the other bases for relief cited in the amended petition likewise fail to justify the relief sought. See *generally* Respts' Mot. The petitioner opposed the motion, which is now fully submitted. See *generally* Petr's Opp'n. The respondents subsequently filed a notice of supplemental authority regarding the Circuit's recent decision in *Kiyemba v. Obama*, 561 F.3d 509 (D.C.Cir.2009). Notice of Supplemental Authority in Supp. of Respts' Mot. to Dismiss at 1–2. The

---

**2.** A detailed account of the factual background of this case can be found in the Supreme Court's decision dismissing the peti-

tioner's original habeas petition. See *Munaf v. Geren*, 553 U.S. 674, 128 S.Ct. 2207, 2214–15, 171 L.Ed.2d 1 (2008).

court turns to the respondents' arguments for dismissal.

## III. ANALYSIS

### A. The FARR Act Does Not Provide a Legal Basis for the Relief Sought

In their motion to dismiss, the respondents assert that the plaintiff has no claim for relief under the FARR Act because the Act does not apply to a detainee who is already physically present in the nation to which his transfer is threatened, and because the Act precludes judicial review of claims under the Act except in the context of final orders of removal by immigration authorities. Respts' Mot. at 7–11; Respts' Reply at 2–12. Additionally, the respondents assert that separation of powers concerns counsel against interpreting the FARR Act in a way that would interfere with the Executive branch's historical authority in the realm of military and foreign affairs. Respts' Reply at 12–13.

In response, the petitioner contends that Congress's inclusion in the FARR Act of the phrase "expel, extradite, *or otherwise effect the involuntary return*" of a person to torture indicates its intent to "prohibit without exception any transfer by U.S. personnel, wherever located, that ends in torture." Petr's Opp'n at 8–11. Additionally, the petitioner argues that the FARR Act does not contain the clear and unambiguous language required to strip federal courts of habeas jurisdiction. *Id.* at 11–14. Finally, the petitioner asserts that the Suspension Clause [3] prohibits the court from

construing the FARR Act so as to preclude habeas jurisdiction. *Id.* at 17.

Article 3 of the CAT provides that "[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Convention Against Torture and Other Cruel, Inhuman, and Degrading Treatment or Punishment, art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100–200 (1988), 1465 U.N.T.S. 85.[4] The FARR Act, which implements U.S. obligations under the CAT, provides that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States." Pub. L. No. 105–277, div. G, 112 Stat. 2681–822 (codified at 8 U.S.C. § 1231 note), § 2242(a).

The FARR Act severely limits the availability of judicial review of CAT claims, providing that

> [n]otwithstanding any other provision of law . . . nothing in this section . . . shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention [Against Torture] or this section . . . except as part of the review of a final order of removal pursuant to section 242 of the

---

**3.** Article I, § 9 of the U.S. Constitution states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

**4.** After President Reagan signed the CAT on April 18, 1988, the Senate conditioned its

consent on its declaration that "the provisions of Articles 1 through 16 of the Convention are not self-executing." *Mironescu v. Costner*, 480 F.3d 664, 666 (4th Cir.2007) (quoting 136 Cong. Rec. S17486–01, S17492 (1990)). In light of this conditioned ratification, Congress enacted the FARR Act to implement the CAT. *Id.*

Immigration and Nationality Act (8 U.S.C. § 1252).

*Id.* § 2242(d).

Relying principally on the Supreme Court's ruling in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the petitioner contends that § 2242(d) does not strip the district courts of habeas jurisdiction over FARR Act claims. *See* Petr's Opp'n at 11–18. In *St. Cyr,* the Supreme Court declined to construe provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") so as to preclude judicial review of an order of removal. *St. Cyr,* 533 U.S. at 298, 121 S.Ct. 2271. The Court observed that there exists a "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *Id.* Because Congress failed to articulate a "clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas," the Court concluded that the IIRIRA did not eliminate habeas jurisdiction. *Id.* at 314, 121 S.Ct. 2271.

The petitioner notes that as in *St. Cyr,* several circuit courts have held that because 28 U.S.C. § 2242(d) does not contain a sufficiently clear and unambiguous expression of congressional intent to limit judicial review of habeas petitions brought under the FARR Act, that provision does not strip district courts of habeas jurisdiction over FARR Act claims. *See Cadet v. Bulger,* 377 F.3d 1173, 1182–83 (11th Cir. 2004) (holding that because the FARR Act does not expressly mention "habeas corpus" or "28 U.S.C. § 2241," it does not eliminate habeas jurisdiction); *Singh v. Ashcroft,* 351 F.3d 435, 441 (9th Cir.2003); *Ogbudimkpa v. Ashcroft,* 342 F.3d 207, 215–18 (3d Cir.2003); *Saint Fort v. Ashcroft,* 329 F.3d 191, 200–02 (1st Cir.2003); *Wang v. Ashcroft,* 320 F.3d 130, 142 (2d Cir.2003).

As the respondents correctly point out, however, the REAL ID Act of 2005 supersedes the holdings in these cases. Respts' Mot. at 10–11. The Act provides, in pertinent part, that

[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision ... a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture.

8 U.S.C. § 1252(a)(4).

█ This Circuit has expressly held that the above provision of the REAL ID Act eliminates habeas jurisdiction over FARR Act claims. *Kiyemba v. Obama,* 561 F.3d 509, 511 (D.C.Cir.2009), *reh'g denied* (July 27, 2009), *reh'g en banc denied* (July 27, 2009). The petitioners in *Kiyemba,* nine ethnic Uighurs detained by the U.S. military in Guantanamo Bay, Cuba, petitioned the district court for a writ of habeas corpus based on the FARR Act, seeking to prevent their transfer to a country that might detain or torture them. *Id.* at 511. The Circuit dismissed the petition, holding that "Congress limited judicial review under the Convention [Against Torture] to claims raised in a challenge to a final order of removal." *Id.* at 514–15 (citing *Munaf,* 128 S.Ct. at 2226). Because the Uighurs were not challenging a final order of removal, the Circuit held that they could not succeed on the FARR Act claims asserted in their habeas petition. *Id.; accord Khouzam v. Attorney Gen. of the U.S.,* 549 F.3d 235, 245 (3d Cir.2008) (holding that § 1252(a)(4) of the REAL ID Act precluded the district court from exercising jurisdiction over the petitioner's habeas petition); *Mironescu v. Costner,* 480 F.3d 664, 676–77 (4th Cir.2007) (distinguishing *St.*

*Cyr* on the grounds that there existed "a plausible reading of the statutes before the [Supreme] Court under which habeas review ... was not barred," whereas § 2242(d) clearly precluded "consideration of CAT and FARR Act claims on habeas review"); *see also O.K. v. Bush*, 377 F.Supp.2d 102, 118 n. 17 (D.D.C.2005) (holding that the FARR Act is "expressly limited to claims arising out of a final order of removal" and does not confer any legal rights outside of the removal setting); *Al–Anazi v. Bush*, 370 F.Supp.2d 188, 194 (D.D.C.2005) (asserting that the petitioners failed to reconcile how the explicit language of § 2242(d) of the FARR Act provides for binding rights outside the context of a final order of removal) (citation omitted); *but see Flores–Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir.2008) (concluding that "[t]he jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal") (citation omitted).

Despite differing circuit interpretations of the REAL ID Act's effect on habeas jurisdiction, this court is constrained by the binding precedent enunciated in *Kiyemba*. *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C.Cir.1997) (observing that "district judges ... are obligated to follow controlling circuit precedent until either [the Circuit] court, sitting en banc, or the Supreme Court, overrule it") (internal citation omitted). Like the petitioners in *Kiyemba*, the petitioner here bases his habeas petition on the FARR Act. Am.

Pet. ¶¶ 37–39. And like the petitioners in *Kiyemba*, the petitioner here is not challenging a final order of removal, but is instead seeking to enjoin his transfer to the custody of a foreign nation. *See id.* The court therefore concludes that the REAL ID Act of 2005 precludes the court's consideration of the petitioner's FARR Act claims.

The petitioner asserts that this conclusion runs afoul of the Suspension Clause because it would effectively "bar prisoners in such situations from pursuing any judicial recourse to review the legality of executive actions regarding their detention." Petr's Opp'n at 17. In so arguing, the petitioner echoes the concerns raised by Judge Griffith in his dissenting opinion in *Kiyemba*, in which he writes that the majority's holding would leave the petitioners without any opportunity to challenge the legality of their detention and transfer. *See Kiyemba*, 561 F.3d at 526 (stating that "the constitutional habeas protections extended to ... [alien] petitioners by *Boumediene*[6] will be greatly diminished, if not eliminated, without an opportunity to challenge the government's assurances that their transfers will not result in continued detention on behalf of the United States") (Griffith, J., dissenting).

Whatever the merit of these arguments,[7] this court is bound by the majority's holding in *Kiyemba*, which—as evidenced by Judge Griffith's dissenting opinion—considered the Suspension Clause issue raised here but nonetheless dismissed the peti-

6. *Boumediene v. Bush*, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008).

7. Indeed, the fact that the petitioner appears to have no avenue of judicial review would appear to implicate Suspension Clause concerns. *See Khouzam v. Attorney Gen. of the U.S.*, 549 F.3d 235, 245–47 (3d Cir.2008)

(stating that although the REAL ID Act clearly deprives the judiciary of habeas jurisdiction over FARR Act claims, serious constitutional questions, such as the possibility of an unconstitutional suspension of the writ, would be raised if the petitioner were not afforded an alternative to the habeas review denied by § 1252(a)(4)).

tioners' FARR Act claims.[8] *See id.* at 514–15. Indeed, without explicitly addressing the issue, the majority in *Kiyemba* suggests that these Suspension Clause concerns are trumped by the separation of powers principles that preclude judicial second-guessing of the Executive's authority on matters of foreign policy and diplomacy. *See id.* at 514 (observing that "[t]he Judiciary is not suited to second-guess . . . determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area") (quoting *Munaf*, 128 S.Ct. at 2226); *see also Munaf*, 128 S.Ct. at 2213 (asserting that judicial inquiry into the likelihood of torture would amount to "unwarranted judicial intrusion into the Executive's ability to conduct military operations abroad"). Accordingly, the petitioner's invocation of the Suspension Clause does not permit the court to deviate from *Kiyemba*'s holding, which precludes a court from considering FARR Act claims asserted in a habeas petition. *Kiyemba*, 561 F.3d at 514–15. As a result of the foregoing, the court grants the respondents' motion to dismiss the petitioner's FARR Act claims. *See Munaf*, 128 S.Ct. at 2228 (dismissing habeas petitions because the petitioners stated no claim for which relief could be granted).

## B. The Court Dismisses the Petitioner's Eighth Amendment Claim

█ The petitioner also contends that his transfer to Iraqi authorities would violate his Eighth Amendment right to be free from cruel or unusual punishment because, under Iraqi law, he could be sub-

jected to the death penalty despite the fact that his alleged crimes did not result in any fatalities. Am. Pet. ¶¶ 43–45. The respondents assert that this line of argument is foreclosed by the Supreme Court's ruling in *Munaf*. Respts' Mot. at 15–16.

█ In *Munaf*, the Supreme Court held that "[t]hose who commit crimes within a sovereign's territory may be transferred to that sovereign's government for prosecution." 128 S.Ct. at 2224–25 (reasoning that the "same principles of comity and respect for sovereigns that preclude judicial scrutiny of foreign convictions necessarily render invalid attempts to shield citizens from foreign prosecution"); *see also Neely v. Henkel*, 180 U.S. 109, 125, 21 S.Ct. 302, 45 L.Ed. 448 (1901) (holding that habeas corpus was not available to prevent the petitioner's extradition to Cuba, despite the fact that he would not be afforded the full panoply of rights afforded to him by the U.S. Constitution in a Cuban criminal proceeding). As the *Munaf* Court explained,

> [t]he jurisdiction of a nation within its own territory is necessarily exclusive and absolute. This is true with respect to American citizens who travel abroad and commit crimes in another nation whether or not the pertinent criminal process comes with all the rights guaranteed by our Constitution. When an American citizen commits a crime in a foreign country he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people.[9]

---

8. The fact that the petitioners in *Kiyemba* were not United States citizens, unlike the petitioner here, is of no legal moment. *See Kiyemba v. Obama*, 561 F.3d 509, 514 n. 4 (D.C.Cir.2009) (stating that "[f]or present purposes, we assume arguendo these alien detainees have the same constitutional rights

with respect to their proposed transfer as did the U.S. citizens facing transfer in *Munaf* ").

9. The Court explained that this conclusion resulted from principles of international comity and respect for foreign sovereigns, as well as separation of powers principles. *See Mu-*

*Munaf,* 128 S.Ct. at 2222 (quoting *Schooner Exch. v. McFaddon,* 11 U.S. (7 Cranch) 116, 136, 3 L.Ed. 287 (1812); *Neely,* 180 U.S. at 123, 21 S.Ct. 302) (internal citations and quotation marks omitted).

The petitioner in the instant case traveled to Iraq of his own volition, and Iraq plainly has the authority to prosecute him for any crimes he committed within its sovereign territory. *Id.* at 2223. *Munaf* therefore bars this court from issuing a writ of habeas corpus to protect the petitioner from the Iraqi criminal justice system based on the Eighth Amendment. *See id.* (noting that "habeas is not a means of compelling the United States to harbor fugitives from the criminal justice system of a sovereign with undoubted authority to prosecute them").

## C.  The Petitioner's Remaining Claims Are Barred From Reconsideration

Lastly, the petitioner asserts that his continued detention by the U.S. military violates the Due Process Clause of the Fifth Amendment and the Citizen Non–Detention Act ("CNDA"), 18 U.S.C. § 4001(a).[12] Am. Pet. ¶¶ 46–53. The petitioner previously asserted both of these claims in his original habeas petition that was filed in this court, *see* Pet. ¶¶ 39–42, 46–47, and dismissed by the Supreme Court, *see Munaf,* 128 S.Ct at 2228. Thus, the respondents move for dismissal of these claims, asserting that both were previously adjudicated and should not be relitigated at this juncture. Respts' Mot. at 12–14, 16–20.

In response, the petitioner asserts that the *Munaf* Court did not consider the legality of the petitioner's detention in light of the fact that the FARR Act renders the threatened transfer illegal. Petr's Opp'n at 18. Because the legality of the petitioner's detention in the absence of any authority to transfer him was not presented to any court, the petitioner argues that the Fifth Amendment and CNDA claims asserted in the amended petition should not be dismissed. *Id.* at 18–19.

Yet as previously discussed, the FARR Act does not provide a legal basis for prohibiting the petitioner's transfer to Iraqi authorities. *See supra* Part III.B.1. Accordingly, the petitioner fails to distinguish the Fifth Amendment and CNDA claims raised in this original petition and dismissed by the *Munaf* Court on this ground.

■ Indeed, the *Munaf* Court specifically rejected the petitioner's argument that the "Due Process Clause includes a '[f]reedom from unlawful transfer' that is 'protected *wherever* the government seizes a citizen.'" *Munaf,* 128 S.Ct. at 2222 (citation omitted). The Court noted its disagreement with this assertion, observing that "[n]ot only have we long recognized the principle that a nation state reigns sovereign within its own territory, we have twice applied that principle to reject claims that the Constitution precludes the Executive from transferring a prisoner to a foreign country for prosecution in an allegedly unconstitutional trial." *Id.* Because the Supreme Court ruled on this precise issue,

---

*naf,* 128 S.Ct. at 2224–25 (observing that "[e]ven with respect to claims that detainees would be denied constitutional rights if transferred, we have recognized that it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments").

12.  Although the amended petition also asserts a claim under "international law," Am. Pet. ¶¶ 50–51, the petitioner consents to the dismissal of his international law claims in his opposition to the respondents' motion to dismiss, Pl.'s Opp'n at 18 n. 9. The court therefore dismisses that claim.

this court is precluded from reconsidering this claim. *See Role Models Am., Inc. v. Geren,* 514 F.3d 1308, 1311 (D.C.Cir.2008) (holding that courts are precluded from reconsidering issues that have already been decided in the same case) (citing *Briggs v. Pa. R.R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948)).

Similarly, with respect to the petitioner's CNDA claim, this court is constrained by the fact that the *Munaf* Court held that the petitioner failed in his original petition to state *any* claim upon which relief could be granted. *See Munaf,* 128 S.Ct. at 2228. Because the petitioner raised the CNDA claim in his original petition, Pet. ¶¶ 46–47, the claim has already been adjudicated, and this court is precluded from reconsidering the issue. *See Role Models Am.,* 514 F.3d at 1311.

■ At any rate, even if this court were to consider the CNDA claim raised in the amended petition, the respondents would still prevail because the petitioner's detention is pursuant to congressional authorization. Section 4001(a) of the CNDA provides that "[n]o citizen shall be imprisoned or otherwise detained by the United States *except pursuant to an Act of Congress.*" 18 U.S.C. § 4001(a) (emphasis added). In the Authorization for Use of Military Force Against Iraq Resolution of 2002 ("AUMF"), Congress authorized the President "to use the Armed Forces of the United States as he determines to be necessary and appropriate in order to: (1) defend the national security of the United States against the continuing threat posed by Iraq; and (2) *enforce all relevant United Nations Security Council resolutions regarding Iraq.*" Pub.L. No. 107–243 § 3(a), 116 Stat. 1501 (emphasis added). Additionally, pursuant to a United Nations

Security Council Resolution, the MNF–I has "the authority to take all necessary measures to contribute to the maintenance of security and stability in Iraq." U.N. Doc. S/RES/1546, ¶ 10 (June 8, 2004), *cited in Munaf,* 128 S.Ct. at 2213. In accordance with this Resolution, the MNF–I conducts a variety of military activities, including detaining individuals who pose a threat to Iraqi security. *Munaf,* 128 S.Ct. at 2213, 2223.

Accordingly, because the United Nations Security Council Resolution authorizes the MNF–I to detain individuals in furtherance of the security and stability of Iraq, and because the AUMF authorizes the President to enforce all relevant Security Council Resolutions, the petitioner's detention is pursuant to an act of Congress.[13] The court therefore dismisses the petitioner's claim that he is being detained in violation of the CNDA.

## IV. CONCLUSION

For the foregoing reasons, the court grants the respondents' motion to dismiss the petitioner's amended petition for a writ of habeas corpus. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2009.

---

**13.** Because the court determines that there is specific congressional authorization for the petitioner's detention, it need not address the

respondents' assertion that the CNDA does not apply to military detention.