# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 22, 2010          Decided May 28, 2010

No. 08-5424

JAMAL KIYEMBA, NEXT FRIEND, ET AL.,
APPELLEES

v.

BARACK OBAMA, PRESIDENT OF THE UNITED STATES, ET AL.,
APPELLANTS

Consolidated with 08-5425, 08-5426, 08-5427, 08-5428,
08-5429

On Remand from the U.S. Supreme Court

*Sharon Swingle*, Attorney, U.S. Department of Justice, argued the cause for appellants. With her on the motion for reinstatement and the opposition to appellees' motion to govern and for remand were *Thomas M. Bondy* and *Robert M. Loeb*, Attorneys.

*Sabin Willett* argued the cause for appellees. With him on the motion to govern and for remand and the opposition to the motion for reinstatement were *Rheba Rutkowski*, *Neil McGaraghan*, *Jason S. Pinney*, *Susan Baker Manning*, *George*

*Clarke, J. Wells Dixon*, *Eric A. Tirschwell*, *Michael J. Sternhell*, *Darren LaVerne*, *Seema Saifee*, *Elizabeth P. Gilson*, *Angela C. Vigil* and *Cori Crider*.

Before: HENDERSON and ROGERS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Opinion concurring in the judgment filed by *Circuit Judge* ROGERS.

PER CURIAM: On March 1, 2010, the Supreme Court vacated our judgment in *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009) (*Kiyemba I*), and remanded the case to us to "determine . . . what further proceedings" in our court or in the district court "are necessary and appropriate for the full and prompt disposition of the case in light of the new developments," *Kiyemba v. Obama*, 130 S. Ct. 1235, 1235 (2010) (per curiam). We assume familiarity with our *Kiyemba I* opinion. The "new developments" the Court identified were as follows. All seventeen petitioners "received at least one offer of resettlement in another country," and twelve accepted an offer. *Id.* The remaining five "rejected two such offers and are still being held at Guantanamo Bay." *Id.*

In compliance with the Supreme Court's mandate we held further proceedings, considered the parties' motions and heard oral argument. We now grant the government's motion to reinstate the judgment and we reinstate our original opinion, as modified here to take account of new developments.

The posture of the case now is not materially different than it was when the case was first before us. On February 19, 2010, the government informed the Supreme Court that one of the

original petitioners "had not previously received an offer of resettlement from any country" before he and his brother received offers from Switzerland in 2010. Letter from Elena Kagan, Solicitor General, to William K. Suter, Clerk of the Court, at 1 (Feb. 19, 2010). The government also told the Court that the five Uighurs who remain at Guantanamo Bay had received a total of two offers – one from Palau in September 2009, which they rejected, and then another from an unnamed country, which they also rejected. *See id.* at 2; Brief for Respondents at 10, *Kiyemba v. Obama*, 130 S. Ct. 1235 (2010) (No. 08-1234). As the government admitted at oral argument, this information – on which the Court apparently relied in its *per curiam* opinion – was not completely accurate. In fact, shortly before we issued our opinion in February 2009, the government filed material under seal stating that each of the seventeen petitioners had recently received a resettlement offer from a foreign country. The five petitioners who remain in this case have thus received and rejected three offers, rather than two. Our original decision was made in the light of resettlement offers to all petitioners, which is why we were confident that the government was "continuing diplomatic attempts to find an appropriate country willing to admit petitioners." *Kiyemba I*, 555 F.3d at 1029.

We agree with the government that no legally relevant facts are now in dispute. None of petitioners' arguments turn on particular factual considerations. Petitioners want us to remand the case to the district court for an evidentiary hearing on whether any of the resettlement offers were "appropriate." But as our original opinion indicated, even if petitioners had good reason to reject the offers they would have no right to be released into the United States. In addition, an intervening opinion of this court precludes the sort of judicial inquiry petitioners seek; it is for the political branches, not the courts, to determine whether a foreign country is appropriate for

resettlement.  *Kiyemba v. Obama*, 561 F.3d 509, 514-16 (D.C. Cir. 2009) (*Kiyemba II*) (discussing *Munaf v. Geren*, 128 S. Ct. 2207, 2225-26 (2008)); *see also id.* at 516-17 (Kavanaugh, J., concurring).

Our original opinion in 2009 held that it was within "the exclusive power of the political branches to decide which aliens may, and which aliens may not, enter the United States, and on what terms." *Kiyemba I*, 555 F.3d at 1025.  At the time of our decision we had heard only from the Executive Branch.  Since then, the Legislative Branch has spoken.  In seven separate enactments – five of which remain in force today – Congress has prohibited the expenditure of any funds to bring any Guantanamo detainee to the United States.  *See* Supplemental Appropriations Act, 2009, Pub. L. No. 111-32, § 14103, 123 Stat. 1859, 1920; Continuing Appropriations Resolution, 2010, Pub. L. No. 111-68, Div. B., § 115, 123 Stat. 2023, 2046; Department of Homeland Security Appropriations Act, 2010, Pub. L. No. 111-83, § 552, 123 Stat. 2142, 2177-78; National Defense  Authorization Act for Fiscal Year 2010, Pub. L. No. 111-84, § 1041, 123 Stat. 2190, 2454-55; Department of the Interior, Environment, and Related Agencies Appropriations Act, 2010, Pub. L. No. 111-88, Div. A, § 428, 123 Stat. 2904, 2962; Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, § 532, 123 Stat. 3034, 3156; Department of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 9011, 123 Stat. 3409, 3466-67. Petitioners say these statutes, which clearly apply to them, violate the Suspension Clause of the Constitution. U.S. CONST. art. I, § 9, cl. 2.  But the statutes suspend nothing: petitioners never had a constitutional right to be brought to this country and released.  Petitioners also argue that the new statutes are unlawful bills of attainder.  The statutory restrictions, which apply to all Guantanamo detainees, are not legislative punishments; they deprive petitioners of no right they

already possessed.  *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 475, 481 (1977).

We therefore reinstate the judgment and reinstate our opinion, as modified here to take into account these new developments.

*So Ordered.*

ROGERS, *Circuit Judge*, concurring in the judgment: As this case returns to the court on remand from the Supreme Court, petitioners' original habeas claim has been overtaken by events, and it is no longer necessary to opine as broadly as the majority does by reinstating its opinion of February 18, 2009. That opinion was overbroad to begin with, as pointed out in my separate concurrence, which must, as a result, also be reinstated, acknowledging certain new developments. *See Kiyemba v. Obama*, 555 F.3d 1022, 1032–39 (D.C. Cir. 2009) (Rogers, J., concurring in the judgment) ("*Kiyemba I*").

These five Uighur petitioners sought certiorari review of this court's reversal of the district court's grant of the writs of habeas corpus on the ground that their "Executive detention is indefinite and without authorization in law, and release into the continental United States is the *only* possible effective remedy." *Kiyemba v. Obama*, 130 S. Ct. 1235, 1235 (2010) (quoting petition for certiorari) (emphasis added). The district court had granted the writs and ordered release into this country under these circumstances, when indefinite detention at Guantanamo was the only alternative. *In re Guantanamo Bay Litig.*, 581 F. Supp. 2d. 33, 42–43 (D.D.C. 2008). Since our decision in February 2009 reversing the district court, the United States has identified several countries willing to receive petitioners for resettlement.[1] One offer of resettlement was made shortly before our February 18, 2009 decision, although the United States "had not made and did not make an independent determination that [the country] was otherwise appropriate for resettlement." Tr. Apr. 22, 2010 at 6 (lines 17–19). After our

---

[1] Twelve of the original seventeen Uighur petitioners have accepted resettlement offers: four in Bermuda, six in Palau, and two in Switzerland. *See* Respondents' Opposition to Petitioners' Motion to Govern and for Remand and Cross-Motion for Reinstatement of Judgment ("Respts' Opposition") at 2–3; Respondents' Letter of Mar. 24, 2010 to Mark J. Langer, Clerk of the Court, at 2.

decision, however, the United States determined that two other countries represent "appropriate" places for petitioners' resettlement, including Palau where six other Uighur petitioners have since been resettled.[2] Tr. Apr. 22, 2010 at 6 (lines 24–25) – 7 (line 1); *see* Respts' Opposition at 10. Those countries conditioned resettlement on petitioners' "willingness to go there." Tr. Apr. 22, 2010 at 7 (lines 3–4).

Petitioners have rejected the offers of resettlement in countries the United States has independently determined are "appropriate" for their resettlement. *See* Respts' Opposition at 10. Oral argument on April 22, 2010 confirmed, however, as is implied in petitioners' post-remand filings in this court, that petitioners do not claim they feared torture or other oppression or harm, including return to China, were they to have accepted resettlement in either of the countries determined "appropriate" by the United States. *See* Tr. Apr. 22, 2010 at 18 (lines 14–17); *see also id.* at 34 (lines 16–17) (counsel for respondents); *id.* at 35 (line 25) – 36 (line 1) (same). Moreover, petitioners acknowledge the United States' efforts to identify a country for resettlement have been "strenuous" and "in good faith." Petitioners' Reply on Motion to Govern and for Remand and Opposition to Respondents' Cross-Motion for Reinstatement of Judgment ("Petrs' Reply") at 10.

---

[2] The United States' determination that a country is "appropriate" for resettlement addresses at least whether there is a possibility that petitioners would "face harm in any proposed country of resettlement." Respondents' Reply in Support of Cross-Motion for Reinstatement of Judgment ("Respts' Reply") at 5. This includes assurance that they would not be returned to China and would be resettled in countries deemed to be "safe." *Id.*; Tr. Apr. 22, 2010 at 33 (line 9). As a matter of policy, the United States will obtain petitioners' consent prior to resettlement. *See id*. at 34 (lines 1–2).

In *Boumediene v. Bush*, 553 U.S. 723, 128 S. Ct. 2229, 2266 (2008), the Supreme Court held that "the habeas court must have the power to order the conditional release of an individual unlawfully detained — though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Notably, the Court observed that "common-law habeas corpus was, above all, an adaptable remedy," and that "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 2267, 2271. On the same day, in *Munaf v. Geren*, 553 U.S. 674, 128 S. Ct. 2207, 2213 (2008), the Court emphasized the distinction between the habeas court's power to issue the writ and order release and its judgment whether to do so "[u]nder [the] circumstances." *See also id.* at 2221 (quoting *Ex parte Watkins*, 3 Pet. 193, 201 (1830) (Marshall, C.J.)). So understood, the United States' position — that the writ of habeas corpus is effective, even without the habeas court issuing the requested "extraordinary judicial order" releasing petitioners into the continental United States while awaiting resettlement, because the seventeen original petitioners have either been transferred from Guantanamo to another country or been offered "appropriate" resettlement elsewhere, Respts' Opposition at 17; *see* Tr. Apr. 22, 2010 at 32 (lines 20–21) — has force, at least for now.

In view of the adaptability of the habeas writ, petitioners' claim of constitutional entitlement to release in the continental United States pending resettlement abroad, *see, e.g.*, Petrs' Reply at 14, cannot presently succeed. Pretermitting the question of whether a habeas court ordering petitioners' release from the courthouse could overcome statutory barriers, *see infra* note 6; *cf. Clark v. Martinez*, 543 U.S. 371, 386 & n.8 (2005); *id.* at

387–88 (O'Connor, J., concurring), the relief petitioners seek —
release from indefinite and unlawful Executive detention at
Guantanamo, *see Kiyemba*, 130 S. Ct. at 1235 — is theirs upon
consent. Petitioners have received offers of resettlement abroad
in countries determined by the United States to be "appropriate"
for their resettlement. As a result, petitioners hold the keys to
their release from Guantanamo: All they must do is register their
consent. *See* Tr. Apr. 22, 2010 at 7 (lines 8–9). The habeas
court thus is no longer confronted with the choice between either
releasing petitioners into the continental United States or
dooming them to indefinite detention at Guantanamo. The
United States has acknowledged it will not deem a country
"appropriate" for resettlement if petitioners would be subject to
torture, *see id.* at 2, 5; *see also Kiyemba I*, 555 F.3d at 1033 n.3
(Rogers, J., concurring in the judgment) (citing the United
Nations Convention Against Torture and Other Cruel, Inhuman
or Degrading Treatment or Punishment, to which the United
States is a signatory). Petitioners neither allege nor proffer
evidence of this or other harm as would occasion the need for a
remand[3] so the habeas court could devise a meaningful additional

---

[3] Petitioners' request for a remand to the district court focused
predominantly on the fact that all of "the facts surrounding purported
offers of resettlement abroad" developed after the petition for
certiorari was filed are not a part of the record, other than through
letters submitted to the Supreme Court by counsel. Motion to Govern
and for Remand ("Petrs' Motion") at 2, 3. Of the matters petitioners
identify, none affect their entitlement claim: Petitioners do not deny
that they received two offers of resettlement in countries the United
States determined "appropriate," and they do not challenge that
determination in any way relevant to their claim of entitlement to
release into the continental United States pending resettlement.
During oral argument their counsel spoke instead of the desire for
citizenship, ownership of property, cultural affinity, and employment,
Tr. Apr. 22, 2010 at 20 (lines 24–25) – 22 (line 4), while
acknowledging petitioners' "biggest issue is, are you going to be

remedy.[4]  The United States has advised that, were petitioners to express an interest, it is prepared to pursue resettlement in Palau, an "appropriate" country that remains receptive to their consensual resettlement.  *See* Respts' Opposition at 10, 24; Tr. Apr. 22, 2010 at 32 (lines 23–25).

Petitioners had not argued prior to this remand that they were entitled to release in the continental United States even if they had offers of resettlement elsewhere, only that they were entitled to be brought and released here because they had nowhere else to go.  *See* Brief for Petitioners at 35–36, *Kiyemba*

---

kicked back to China.  That's the big risk," *id.* at 25 (lines 20–21).

[4] The majority overreads both *Munaf*, 128 S. Ct. at 2213, and this court's most recent opinion in *Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009) ("*Kiyemba II*").  *See* Maj. Op. at 3–4.  In *Munaf* the Supreme Court limited its holding, stating that "[u]nder circumstances such as those presented here," habeas corpus provided no relief.  128 S. Ct. at 2213.  The Court did state, in discussing the State Department's evaluation of the risk of torture and prisoner mistreatment in a foreign country's legal system, that "[t]he Judiciary is not suited to second-guess *such* determinations," *id.* at 2226 (emphasis added), but went no further.  Noting that the petitioners there "allege only the possibility of mistreatment in a prison facility," the Court left open the question whether, in "a more extreme case in which the Executive has determined that a detainee is likely to be tortured but decides to transfer him anyway," the writ would provide relief.  *Id.*  So too in *Kiyemba II*, this court declined to consider the likelihood of torture and prosecutions under the foreign legal system on grounds of comity and separation of powers, 561 F.3d at 514–16 (citing *Munaf*, 128 S. Ct. at 2225–26).  Neither case stands for the broader proposition that the habeas court has no role to play whenever a petitioner challenges an Executive Branch determination.  *See* *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001).

*v. Obama*, 130 S. Ct. 1235 (2010) (No. 08-1234).[5] The fact that an offer of resettlement in an "appropriate" country remains available, however, means petitioners' release from Guantanamo is available without the need for further action by the habeas court. That a habeas court may have the authority to order release is a separate question from whether that court is obligated to order release, *cf. Munaf*, 128 S. Ct. at 2220–21, much less release into the continental United States. Sustaining petitioners' objection to "exile" to "a distant island" (Palau), Petrs' Reply at 13–14, would imply that their claim of constitutional entitlement under the Suspension Clause to release in the continental United States applies no matter where "appropriate" resettlement is offered, until they give their consent to be resettled abroad. During oral argument petitioners disclaimed such a broad contention, *see* Tr. Apr. 22, 2010 at 24 (line 23) – 25 (line 4); *id.* at 25 (lines 20–21), presumably because *Boumediene* and *Munaf* reaffirmed that circumstances influence the nature of the meaningful remedy a habeas court should provide. *See Boumediene*, 128 S. Ct. at 2266–67; *Munaf*, 128 S. Ct. at 2213, 2220–21.

Petitioners' reliance on Fifth Amendment due process and the Geneva Conventions in support of their claim of entitlement

---

[5] In their merits brief to the Supreme Court, petitioners stated:

Petitioners did not seek admission [under the immigration laws]. They asked only for release from a prison to which they were brought in chains. If U.S. release is the *only* way to achieve that release, Petitioners are not responsible for the dilemma. Transfer to a safe haven abroad would have been welcome, and still would be welcome if initiated from the continental United States. Petitioners prefer U.S. release only to U.S. prison.

*Id.* (emphasis added).

to release in the continental United States pending resettlement fails for similar reasons. Petitioners seek writs of habeas corpus grounded in their claims of unlawful Executive detention at the Guantanamo Bay Naval Station. *See* Amended Petition for Writs of Habeas Corpus, filed Oct. 21, 2005, at 10, 31. Whatever role due process and the Geneva Conventions might play with regard to granting the writ, petitioners cite no authority that due process or the Geneva Conventions confer a right of release in the continental United States when an offer of resettlement abroad in an "appropriate" country is made in good faith and remains available. In *Boumediene*, 128 S. Ct. at 2266–67, the Supreme Court reaffirmed the adaptability of the habeas remedy, regardless of the reason the underlying detention is unlawful. The adaptable nature of the habeas remedy is intrinsic to the writ itself, and petitioners' current circumstances undermine their claim that the habeas remedy, even accounting for the Fifth Amendment Due Process Clause and the Geneva Conventions, requires their release into the continental United States pending resettlement abroad.

Contrary to petitioners' suggestion, the United States has not argued that their rejection of resettlement offers means they have permanently waived their right to seek habeas relief. *See* Petrs' Reply at 13, 14; Tr. Apr. 22, 2010 at 19 (lines 10–12), 25 (lines 13–16), 26 (lines 5–6). That a habeas court declines to provide a preferred remedy does not render a meaningful remedy forever unavailable, for circumstances can change, *see Boumediene*, 128 S. Ct. at 2267. But petitioners' circumstances differ from those of Guantanamo detainees who were designated enemy combatants, are now held at Guantanamo as enemies under the laws of war, and are seeking release by writ of habeas corpus. *See* Tr. Apr. 22, 2010 at 32 (lines 12–13); *see also* Brief for Respondents in Opposition to the Grant of Certiorari at 5, *Kiyemba v. Obama*, 130 S. Ct. 1235 (2010) (No. 08-1234). Petitioners face no opposition by the United States to their

release from Guantanamo for resettlement in countries abroad. Indeed, the United States has taken the position that "[p]etitioners are indisputably entitled to release from military detention under the Authorization for Use of Military Force," 50 U.S.C. § 1541 note. Respts' Opposition at 17. Further, the United States has identified "appropriate" countries for petitioners' resettlement and resettlement in one such country remains available. Petitioners' claim of constitutional entitlement to release in the continental United States pending resettlement abroad has thus been overtaken by events: Petitioners hold the keys to their release from Guantanamo for resettlement in an "appropriate" country.[6]

---

[6] It is unnecessary, therefore, to decide whether Congress unconstitutionally suspended the writ or enacted a bill of attainder when it barred the use of appropriated funds to release or transfer detainees at Guantanamo into the continental United States for purposes other than trial and attendant detention. *See, e.g.*, Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, § 532, 123 Stat. 3034, 3156 (2009) (providing that, except for prosecution and detention during legal proceedings, "[n]one of the funds made available in this or any other Act may be used to [transfer or] release an individual who is detained, as of June 24, 2009, at Naval Station, Guantanamo Bay, Cuba, into the continental United States, Alaska, Hawaii, or the District of Columbia . . . .").